*In re* TIEMANN

Docket Nos. 303813 and 306407. Submitted May 1, 2012, at Grand Rapids. Decided May 8, 2012. Approved for publication July 3, 2012, at 9:05 a.m. Leave to appeal denied, 493 Mich 958.

Cullen A. Tiemann, a 15-year-old male, entered a plea of nolo contendere in the Ionia Circuit Court, Family Division, to a charge of third-degree criminal sexual conduct involving a female victim between the ages of 13 and 16. He then sought to withdraw the plea on the basis that he allegedly had not known that he would have to register under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, as a result of his plea. The court, Robert S. Sykes, Jr., J., denied the motion to withdraw the plea and entered an order of disposition, placing Tiemann on six months' probation to be served in his parents' home. Tiemann appealed the order of disposition (Docket No. 303813). The trial court then conducted a hearing, pursuant to MCL 28.723a, to determine whether Tiemann could establish that the 14-year-old victim had consented to the sexual conduct and therefore Tiemann would not be required to register under SORA. The court determined that Tiemann had failed to establish the victim's consent and therefore he was required to register under SORA. Tiemann appealed that holding (Docket No. 306407). The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. There is no public policy bar to the prosecution of one child who engages in sexual conduct with another child when both children are within the same protected age group. Children are entitled to no less protection from other children who sexually abuse them than they are from adults who sexually abuse them.

2. MCL 750.520d is not ambiguous. Just because the violation of a law is prevalent does not mean that enforcement of the law is absurd.

3. A defendant is responsible for his or her illegal conduct, regardless of the defendant's duty to put law enforcement personnel and the public on notice of that illegal conduct. Therefore, it is not incompatible that SORA states in MCL 28.723 that a person convicted of a tier I, II, or III offense must

register and at MCL 28.722(w)(*iv*) that a tier III offense includes, among other violations, a violation of MCL 750.520d unless a court determines that the victim consented to the conduct constituting the violation, that the victim was at least 13 but less than 16 years of age, and the offender is not more than four years older than the victim. The statutes are not so incompatible that both cannot stand. There is no conflict if a defendant does not have to register under SORA after a finding that the victim consented but remains convicted of the conduct constituting the violation, for example, consensual statutory rape.

4. The term "person" as used in MCL 750.520d(1)(a) is not vague with respect to proscribing the conduct of a child between the ages of 13 and 16 when it comes to consensual sex with another child between the ages of 13 and 16. Because Tiemann is not making a First Amendment argument in this regard, the question is whether the statute is vague as applied to the conduct allegedly proscribed in this case. That it may be vague with respect to the conduct of a rape victim is not relevant consideration in this case.

5. Tiemann did not establish factual support for his equal protection argument that the charges were brought against him, but not against the victim, because of his gender. His aggressive behavior was more likely the basis for bringing the charges against him.

6. Because the effects of SORA do not implicate a liberty or property interest, the Due Process Clause did not require that additional due process guarantees be afforded Tiemann at the consent hearing conducted pursuant to MCL 28.723a.

7. SORA is not a criminal statute. Because it is a regulatory statute, a criminal prosecution is not at issue and the Confrontation Clauses of the United States Constitution and the Michigan Constitution do not apply to consent hearings conducted pursuant to MCL 28.723a.

Affirmed.

1. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — JUVENILE OFFENDERS.

The purpose of the provision of the third-degree criminal sexual conduct statute prohibiting acts of sexual penetration with another person when that other person is at least 13 years of age and under 16 years of age is the protection of the minor victim; the age of the offender is not a relevant concern; there is no public policy bar to the prosecution of one child who engages in sexual conduct with another child when both are within the same protected age group (MCL 750.520d[1][a]).

2. STATUTES — ENFORCEMENT OF STATUTES — WIDESPREAD VIOLATIONS OF STATUTES.

The fact that the violation of a law is prevalent does not mean that enforcement of the law is absurd.

3. CONSTITUTIONAL LAW — STATUTES — VAGUE STATUTES.

The constitutionality of a statute must be examined in light of the particular facts at hand without concern for the hypothetical rights of others when a defendant's challenge of a statute as being impermissibly vague does not implicate First Amendment freedoms; the proper inquiry is not whether the statute may be susceptible to impermissible interpretations, but whether the statute is vague as applied to the conduct allegedly proscribed in the case.

4. CONSTITUTIONAL LAW — EQUAL PROTECTION — SELECTIVE CRIMINAL PROSECUTIONS.

Michigan has adopted a two-pronged test to determine whether a particular prosecution violates the Equal Protection Clause: first it must be shown that the defendants were singled out for prosecution while others similarly situated were not prosecuted for the same conduct, second, it must be established that the discriminatory selection in prosecution was based on an impermissible ground such as race, sex, religion, or the exercise of a fundamental right.

5. CRIMINAL LAW — CONSTITUTIONAL LAW — SEX OFFENDERS REGISTRATION ACT — DUE PROCESS — RIGHT TO CONFRONTATION.

The Sex Offenders Registration Act is regulatory and does not impose punishment; the act does not implicate a liberty or property interest and does not implicate due process rights; the act is not a criminal statute that concerns a criminal prosecution to which the Confrontation Clause applies (MCL 28.721 *et seq.*).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Ronald J. Schafer*, Prosecuting Attorney, and *Kyle B. Butler*, Assistant Prosecuting Attorney, for petitioner.

*Foster & Harmon, P.C.* (by *Richard A. Foster*), for respondent.

Amicus Curiae:

*Marsha Levick* and *Richard A. Foster* for the Juvenile Law Center.

Before: WHITBECK, P.J., and SAWYER and HOEKSTRA, JJ.

PER CURIAM. In these consolidated appeals, the 15-year-old respondent, Cullen Tiemann, entered a plea of nolo contendere to a charge of third-degree criminal sexual conduct (CSC III) involving a victim between the ages of 13 and 16.[1] The trial court thereafter denied his motion to withdraw his plea, which, in part, was based on Tiemann's alleged lack of knowledge that his plea would result in him having to register under the Sex Offenders Registration Act (SORA).[2] The trial court entered an order of disposition, placing Tiemann on six months' probation in his parents' home. In Docket No. 303813, Tiemann appeals as of right that order of disposition. After the entry of the order of disposition, there was a consent hearing in the trial court pursuant to MCL 28.723a. The trial court then held that Tiemann had not met his burden of establishing consent by the victim and that he was therefore required to register under SORA. In Docket No. 306407, Tiemann also appeals that holding as of right. We affirm.

### I. FACTS

On February 20, 2010, Tiemann went to HS's home at her invitation. They went to the guest house and proceeded to "make out." HS said that after Tiemann removed her shirt, she protested when he tried to remove her bra and told him "she really didn't want to do this." Tiemann allegedly told her that he had done this before and not to worry. HS said that ultimately,

---

[1] MCL 750.520d(1)(a).

[2] MCL 28.721 *et seq*.

Tiemann removed all her clothes, digitally penetrated her, and performed cunnilingus on her. She said that she told him that she "didn't want to" while he was digitally penetrating her but she then "gave in because she knew he wouldn't stop." She claimed that during the subsequent sexual acts, she told him to stop, and he did, but then he started again. HS said that Tiemann stopped completely when she told him to stop a second time. After that, they dressed, lay down on the couch together, and fell asleep.

Tiemann admitted that HS had said once that they were moving too fast, but that she then had said that she would be okay. He claimed that she pulled him back to her on three occasions when he asked if she wanted him to leave. He also acknowledged that HS had said that she wanted to stop while he was digitally penetrating her, and that he offered to leave. Further, he acknowledged that she had sat up and that he had laid her back down four times. He claimed that he was not forcing her during penile-vaginal sex. Further, he acknowledged understanding that she wanted to stop when she expressed that she was uncomfortable. When asked if he should have stopped, Tiemann said "Yeah, lots of times." Finally, Tiemann stated that he felt that he was being pushy when he told her to relax and be comfortable with it and that eventually it seemed that she was comfortable because it "felt like she just gave in." However, he said that he "forc[ed] it on her a couple of times" and that he knew it was wrong.

The prosecutor originally charged Tiemann with three counts of CSC III involving force or coercion and one count of fourth-degree CSC (CSC IV) involving force or coercion.[3] The prosecutor later amended the petition, charging Tiemann with three counts of CSC III with a

---

[3] MCL 750.520e(1)(b).

victim between the ages of 13 and 16 years of age "or defendant affected sexual penetration through force or coercion," and one count of CSC IV involving force or coercion.

The prosecutor later brought a motion in limine, seeking to prohibit the defense from mentioning that the 14-year-old victim was not charged, and seeking to prohibit Tiemann from raising a consent defense to the CSC III charges. In granting the motion, the trial court ruled that whether the victim was charged was a prosecutorial decision not relevant to the charges against Tiemann. Further, the trial court noted an absence of authority allowing consent to be raised when a defendant under the age of 16 has consensual sex with a victim under 16 years of age. In contrast, the trial court recognized that consent could not be raised as a defense to such a charge in a case where the defendant was an adult.[4]

After the trial court made these rulings, the parties reached a plea agreement whereby Tiemann was to plead no contest to one CSC III count and the other charges would be dismissed. After reviewing two case report summaries of interviews of the victim and Tiemann, the trial court accepted the plea. The trial court found a factual basis for a determination that Tiemann had intercourse with the victim who was between the ages of 13 and 16 (there was no mention of force or coercion).

Apparently, an initial order of adjudication indicated that Tiemann was convicted based on evidence showing the use of force or coercion. However, a corrected order of adjudication specifies that the victim's age was the basis for the conviction.

---

[4] *People v Starks*, 473 Mich 227, 229-230; 701 NW2d 136 (2005).

Tiemann then moved to withdraw his plea. In essence, he averred that he had been unaware that he would have to register under SORA or that he had not understood the ramifications of registering. His attorney refuted the claim that he had not been adequately advised. Because the order of adjudication had apparently not yet been corrected, Tiemann also averred that he had passed a polygraph examination and had a meritorious defense to the charge to the extent that it was based on his alleged use of force and coercion. He was then advised that the order of adjudication would be corrected. Tiemann further argued that he was entitled to a trial because there was an issue regarding consent between similarly aged participants and that he should be able to present to a jury that a perpetrator and a victim were required for a conviction but that both participants in this case were "victims"; he suggested that this was a defense to the crime, not that it was a reason someone in his position could not be charged with the crime. He also argued that there was an equal protection problem resulting from charging the male but not the female, where both were under age 16. The trial court found that these issues were all addressed by the ruling on the motion in limine and that they were not a sufficient basis for withdrawal of the plea.

Thereafter, the trial court entered an order of disposition on April 18, 2011. An amendment to SORA subsequently took effect and provided that for cases pending on July 1, 2011, a juvenile could be excused from registration under SORA under certain circumstances if the juvenile could establish that the victim had consented.[5] The trial court therefore held a hearing on the issue of consent. At the hearing, various wit-

---

[5] MCL 28.723a(7).

nesses were called, and HS read a statement into the record giving a more detailed account of what transpired on the night in question. In this account, she indicated that she may have acquiesced "so that he wouldn't be so mean" but gave further indications that the sex was not consensual. Ultimately, the trial court found that Tiemann was not exempt from SORA registration requirements.

Tiemann now appeals.

## II. APPLICATION OF MCL 750.520d TO CONSENSUAL SEXUAL INTERACTIONS BETWEEN MINORS

### A. STANDARD OF REVIEW

Tiemann argues that MCL 750.520d violates public policy as applied to consenting minors in the same age class. Tiemann also argues that the statute is ambiguous. Because Tiemann did not raise this issue in the trial court, we will review this unpreserved constitutional issue for plain error affecting his substantial rights.[6] This issue also involves statutory interpretation, which is a question of law that we review de novo.[7]

### B. PUBLIC POLICY

Tiemann's public policy argument has already been rejected in *In re Hildebrant*.[8] There, the 16-year-old female defendant became impregnated by her 14-year-old adopted brother, and she was prosecuted under MCL 750.520d(1)(a).[9] She argued that the statute did

---

[6] *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

[7] *People v Seiders*, 262 Mich App 702, 705; 686 NW2d 821 (2004).

[8] *In re Hildebrant*, 216 Mich App 384; 548 NW2d 715 (1996).

[9] *Id.* at 386.

not apply to offenders who fell within the statutorily protected age group because it would violate public policy.[10] This Court found no violation of public policy on the basis of the circumstances of that case, noting that the statute did not "exclude any class of offenders on the basis of age."[11] This Court further reasoned as follows:

> Prosecuting defendant would not violate the policy behind the criminal sexual conduct statute. *Because the purpose of the statute is the protection of the minor victim, the age of the offender is not a relevant concern.* Statutory rape, a strict-liability offense, has been upheld as a matter of public policy because of the need to protect children below a specific age from sexual intercourse. The public policy has its basis in the presumption that the children's immaturity and innocence prevents them from appreciating the full magnitude and consequences of their conduct. Because this policy focuses on the exploitation of the victim, we find that the Legislature did not intend to withdraw the law's protection of the victim in order to protect the offender.
>
> Defendant maintains that laws prohibiting sexual conduct with a minor within a certain age range are intended to focus on the ability of the offender to exploit and manipulate the victim. While an older child could certainly manipulate a much younger child, defendant and the victim were less than two years apart in age. While we agree that consensual sexual relations involving two partners over a certain age might not involve exploitation or manipulation, it is not our role to create policy. *If our state legislature had intended that courts consider the age differential between the offender and the victim, it could have included this consideration in the criminal sexual conduct statutes.*[12]

---

[10] *Id*. at 386-387.

[11] *Id*. at 386.

[12] *Id*. at 386-387 (citations omitted; emphasis added).

Tiemann takes issue with *Hildebrant*, arguing that it assumes that one child will always be the offender and the other a victim. He argues that if MCL 750.520d(1)(a) protects children between the ages of 13 and 16 because children in this age group can be exploited and manipulated, then when two minors within this class consent to a sexual act, both are "victims." However, Tiemann does not effectively distinguish *Hildebrant*, which stands for the proposition that there is no public policy bar to prosecution of one child who engages in sexual acts with another child when both children are within the same protected age group.[13]

### C. AMBIGUITY

Tiemann raises several arguments in support of his contention that MCL 750.520d is ambiguous. We will address each argument in turn.

Citing the prevalence of teenagers having consensual sex, Tiemann argues that it would be absurd to conclude that the Legislature intended to criminalize such conduct. We first note that the statute, as plainly written, is unambiguous, so that this Court need not discern the Legislature's intent. In *People v Valentin*, the Michigan Supreme Court summarized the governing law on the interpretation of statutes:

In resolving disputed interpretations of statutory language, it is the function of the reviewing court to effectuate

---

[13] See also *PG v State*, 616 SW2d 635, 641 (Tex Civ App, 1981) ("It would frustrate the intent of the statutes to hold that a child is protected from sexual abuse by adults, with or without his consent, but is not protected from sexual abuse by minors, with or without his consent. Children are entitled to no less protection from other children who sexually abuse them than they are from adults who sexually abuse them.").

the legislative intent. *If the language used is clear, the Legislature must have intended the meaning it has plainly expressed, and the statute must be enforced as written.* However, if a statute is susceptible to more than one interpretation, the court must engage in judicial construction, and "a statute that is unambiguous on its face can be 'rendered ambiguous by its interaction with and its relation to other statutes.' "[14]

Moreover, while Tiemann's contention regarding the Legislature's intent has some merit, as the prosecutor points out, just because the violation of a law is prevalent does not mean that enforcement of that law is absurd.

Tiemann's next argument regarding ambiguity is convoluted. In essence, he asserts that the statute must be ambiguous because an unambiguous statute is a clear proclamation of public policy and the fact that the *Hildebrant* Court looked at the public policy underlying the statute was an indication that the statute is ambiguous. However, the Court in *Hildebrant* simply did not address the issue of ambiguity, relying instead on the plain language of the statute as indicative of the clear public policy underlying the statute.

Tiemann next argues that this statute has been rendered ambiguous because it cannot be harmonized with SORA, as amended. SORA requires that those convicted of a listed offense must register.[15] " 'Listed offense' " is defined as "a tier I, tier II, or tier III offense."[16] After its amendment, SORA states that a tier III offense includes, among other violations, a violation of MCL 750.520d *unless*

---

[14] *People v Valentin*, 457 Mich 1, 5-6; 577 NW2d 73 (1998) (citations omitted).

[15] MCL 28.723.

[16] MCL 28.722(k).

the court determines that the victim consented to the conduct constituting the violation, that the victim was at least 13 years of age but less than 16 years of age at the time of the offense, and that the individual is not more than 4 years older than the victim.[17]

Further, SORA provides:

If an individual pleads guilty to or is found guilty of a listed offense or is adjudicated as a juvenile as being responsible for a listed offense but alleges that he or she is not required to register under this act because section 2(u)(*v*) or (*vi*) applies or section 2(w)(*iv*) applies, and the prosecuting attorney disputes that allegation, the court shall conduct a hearing on the matter before sentencing or disposition to determine whether the individual is required to register under this act.[18]

Tiemann argues that it would be irreconcilable if a defendant did not have to register under SORA after a finding of consent but would nonetheless remain convicted of consensual statutory rape. However, we see no conflict. A defendant is responsible for his or her illegal conduct, regardless of that defendant's duty to put law enforcement personnel and the public on notice of that illegal conduct.[19] The statutes are not " 'so incompatible that both cannot stand . . . .' "[20]

Tiemann last argues that the term "person" as used in the statute is ambiguous. MCL 750.520d(1)(a) provides:

---

[17] MCL 28.722(w)(*iv*).

[18] MCL 28.723a(1).

[19] MCL 28.721a ("The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.").

[20] *Valentine v Redford Twp Supervisor*, 371 Mich 138, 144; 123 NW2d 227 (1963) (citation omitted).

> A *person* is guilty of criminal sexual conduct in the third degree if the *person* engages in sexual penetration with another person and if any of the following circumstances exist:
>
> (a) That other person is at least 13 years of age and under 16 years of age.[21]

Tiemann asserts that the term is ambiguous because "person" is so broad that it could arguably apply, for example, to a rape victim where the assailant was underage. Tiemann's argument that the statute is overbroad is in reality a constitutional argument. In *People v Newton*, this Court explained:

> A penal statute is unconstitutionally vague if (1) it does not provide fair notice of the conduct proscribed, (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed, or (3) its coverage is overbroad and impinges on First Amendment freedoms. Defendant is not challenging the statute as being overbroad and impinging on First Amendment freedoms.
>
> When a defendant's vagueness challenge does not implicate First Amendment freedoms, the constitutionality of the statute in question must be examined in light of the particular facts at hand without concern for the hypothetical rights of others. The proper inquiry is not whether the statute may be susceptible to impermissible interpretations, but whether the statute is vague as applied to the conduct allegedly proscribed in this case.[22]

Thus, because Tiemann is not making a First Amendment argument, the question is whether "the statute is vague as applied to the conduct allegedly proscribed *in this case*."[23] That it may be vague with

---

[21] Emphasis added.

[22] *People v Newton*, 257 Mich App 61, 66; 665 NW2d 504 (2003) (quotation marks and citations omitted).

[23] *Id.* (emphasis added; quotation marks and citations omitted).

respect to the conduct of a rape victim is not a relevant consideration in this case. The question *here* is whether it is vague with respect to proscribing the conduct of a child between the ages of 13 and 16 when it comes to consensual sex with another child between the ages of 13 and 16. *Hildebrant* establishes that a minor engaged in a consensual sexual act with another minor within the same age range can be regarded as an offender subject to prosecution. Thus, the statute cannot be deemed vague as applied to the conduct proscribed.

In sum, we reject Tiemann's argument that MCL 750.520d violates public policy or is ambiguous with regard to the prosecution of consenting minors engaging in sexual conduct.

### III. EQUAL PROTECTION

#### A. STANDARD OF REVIEW

Tiemann argues that his constitutional right to equal protection was violated. He claims that he and HS were similarly situated because they were in the same protected class of 13- to 16-year-olds and, therefore, the charges against him were impermissibly based on his gender. Because he did not raise this issue in the trial court, we review it for plain error affecting a substantial right.[24]

#### B. LEGAL PRINCIPLES

In *In re Hawley*,[25] the 15-year-old respondent was charged under MCL 750.520b(1)(a) with having sexual relations with a child under the age of 13 years when he had had allegedly consensual sex with a 12-year-old girl. The respondent argued, like Tiemann here, that he was

---

[24] *Carines*, 460 Mich at 764.

[25] *In re Hawley*, 238 Mich App 509, 510; 606 NW2d 50 (1999).

prosecuted solely on the basis of his gender.[26] Quoting
*People v Ford*,[27] this Court noted:

> Michigan has adopted a two-pronged test to determine
> whether a particular prosecution violates the Equal Pro-
> tection Clause:
>
> > "First, it must be shown that the defendants were
> > "singled" out for prosecution while others similarly situated
> > were not prosecuted for the same conduct. Second, it must be
> > established that this discriminatory selection in prosecution
> > was based on an impermissible ground such as race, sex,
> > religion or the exercise of a fundamental right."[28]

Preliminarily, the Court found that the offender and
the victim were not similarly situated because they were
in different age ranges as set forth in the statute and
because greater protection was afforded to children under
13 years of age.[29] Moreover, the Court found that the
younger age of the victim was a valid basis for deciding to
prosecute the boy and not the girl and that the respondent
had failed to establish that his gender was the reason for
prosecuting him and not the girl.[30]

Here, Tiemann and HS were similarly situated. Al-
though she was 14 and he was 15 years of age, they were
within the same age classification under the statute.
Thus, if Tiemann could establish that he was prosecuted
because of his gender, he could establish an equal protec-
tion violation.

### C. ANALYSIS

Tiemann argues that he could not have been pros-
ecuted on the basis of an alleged lack of consent because

---

[26] *Id.* at 510-511.

[27] *People v Ford*, 417 Mich 66, 102; 331 NW2d 878 (1982).

[28] *In re Hawley*, 238 Mich App at 513.

[29] See *id.* at 513-514.

[30] *Id.* at 514.

there was evidence that HS was a willing participant. While there were indications to this effect during part of the encounter, Tiemann also said that he kept engaging in sexual acts even after HS indicated that she was uncomfortable, that he understood that she wanted to stop at least at one point, that he should have stopped "lots of times," and, most telling, that he "forc[ed] it on her a couple of times." Thus, there was evidence indicating that Tiemann was more likely charged because of his aggressive behavior, not because he was a male. Thus, Tiemann has not established that he was charged because of his gender or that his equal protection rights were violated.

### IV. FACTUAL BASIS FOR THE PLEA

Tiemann argues that the factual basis for his plea was impermissibly based on a police report referring to interviews of him and the victim. However, at the plea hearing, Tiemann did not challenge the factual basis or the use of the documents to establish that factual basis, and his counsel indicated satisfaction with the taking of the plea. Moreover, Tiemann did not raise this issue in his motion to withdraw the plea. Accordingly, Tiemann has waived this issue,[31] thereby extinguishing any alleged error and foreclosing appellate review.[32]

### V. REGISTRATION UNDER SORA

Tiemann argues that he should not have been required to register under SORA until after the consent hearing. However, after the filing of Tiemann's brief on June 24,

---

[31] *People v Kaczorowski*, 190 Mich App 165, 172-173; 475 NW2d 861 (1991).

[32] *People v McGraw*, 484 Mich 120, 138; 771 NW2d 655 (2009) (CORRIGAN, J., dissenting).

2011, in his appeal of the order of disposition (Docket No. 303813), he had a hearing on the issue of consent on September 1 and 6, 2011. Therefore, this issue is moot.[33]

## VI. NOTICE

Tiemann's next issue, raised in Docket No. 306407, is that he could not be prosecuted for a strict liability offense because he was not on notice of the conduct proscribed. However, the appeal in Docket No. 306407 is not from the order of adjudication or disposition, but from the order issued after the consent hearing. This issue should have been raised in Docket No. 303813. Thus, it is not properly before the Court.

## VII. DUE PROCESS

### A. STANDARD OF REVIEW

Tiemann argues that the consent hearing was a quasi-criminal proceeding and that he should have been afforded additional procedural due process guarantees along the lines of those afforded in *Mathews v Eldridge*.[34] He argues that he should not have been burdened with proving consent by a preponderance of the evidence and that he should have been entitled to cross-examine HS. Amicus curiae Juvenile Law Center reiterates this argument but also contends that Tiemann's Sixth Amendment right of confrontation was violated when Tiemann was not allowed to cross-examine HS. Because he did not raise this issue in the trial court, we review it for plain error affecting a substantial right.[35]

---

[33] See *People v Rutherford*, 208 Mich App 198, 204; 526 NW2d 620 (1994).

[34] *Mathews v Eldridge*, 424 US 319; 96 S Ct 893; 47 L Ed 2d 18 (1976).

[35] *Carines*, 460 Mich at 764.

## B. PROCEDURAL DUE PROCESS

In *In re VanDalen*,[36] this Court recently set forth the analysis applicable to claims of procedural due process violations:

> Procedural due process " 'limits actions by the government and requires it to institute safeguards in proceedings that affect those rights protected by due process, such as life, liberty, or property.' " " 'A procedural due process analysis requires a court to consider "(1) whether a liberty or property interest exists which the state has interfered with, and (2) whether the procedures attendant upon the deprivation were constitutionally sufficient." ' " Generally, three factors will be considered to determine what is required by due process:

> " 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' "

With regard to the issue of due process in relation to SORA hearings, in *In re Wentworth*,[37] this Court concluded:

> [N]o due process rights are implicated by the SORA. The SORA did not deprive respondent of liberty. Any deprivation respondent suffered flowed not from the act, but from her own misconduct that resulted in the juvenile disposition. Injury to a person's reputation is not a protected liberty or property interest.

---

[36] *In re VanDalen*, 293 Mich App 120, 132; 809 NW2d 412 (2011) (citations omitted).

[37] *In re Wentworth*, 251 Mich App 560, 565-566; 651 NW2d 773 (2002) (citations omitted).

More directly, this Court has determined that SORA is regulatory and does not impose punishment.[38] Further, in *Doe v Kelley*,[39] the United States District Court for the Western District of Michigan expressly found that SORA did not implicate procedural due process:

> *With respect to the due process claim, plaintiffs have failed to show that the amendment threatens to deprive them of any protected liberty or property interest. The amendment, again, does nothing more than compile truthful, public information and make it available.* To the extent public use of such information may result in damage to plaintiffs' reputation or may destablize their employment and other community relations, such effects are purely speculative on the present record and, in any event, would appear to flow most directly from plaintiffs' own convicted misconduct and from private citizens' reaction thereto, and only tangentially from state action.

Because the effects of SORA do not implicate a liberty or property interest, the Due Process Clause does not provide Tiemann with procedural safeguards. In this case, any safeguards would be those afforded by the statute.

### C. RIGHT TO CONFRONTATION

Regarding the Confrontation Clause, US Const, Am VI provides:

---

[38] See *In re TD*, 292 Mich App 678, 682-683, 691; 823 NW2d 101 (2011) (concluding that requiring a rehabilitated juvenile to register under SORA does not constitute cruel and unusual punishment), citing *People v Pennington*, 240 Mich App 188, 191-192; 610 NW2d 608 (2000) (holding that the registration requirements were not punishment and that SORA therefore did not violate the constitutional prohibition against ex post facto laws), and *People v Golba*, 273 Mich App 603; 729 NW2d 916 (2007).

[39] *Doe v Kelley*, 961 F Supp 1105, 1112 (WD Mich, 1997) (emphasis added). See *American Axle & Mfg, Inc v Hamtramck*, 461 Mich 352, 364; 604 NW2d 330 (2000) ("federal court decisions are not precedentially binding on questions of Michigan law"; however, a Michigan state court may choose to agree with the analysis of a federal court decision).

> *In all criminal prosecutions*, the accused shall enjoy the
> right to a speedy and public trial, by an impartial jury of
> the State and district wherein the crime shall have been
> committed, which district shall have been previously ascer-
> tained by law, and to be informed of the nature and cause
> of the accusation; to be confronted with the witnesses
> against him; to have compulsory process for obtaining
> witnesses in his favor, and to have the Assistance of
> Counsel for his defence.[40]

Similarly, Const 1963, art 1, § 20 provides:

> *In every criminal prosecution*, the accused shall have the
> right to a speedy and public trial by an impartial jury,
> which may consist of less than 12 jurors in prosecutions for
> misdemeanors punishable by imprisonment for not more
> than 1 year; to be informed of the nature of the accusation;
> to be confronted with the witnesses against him or her; to
> have compulsory process for obtaining witnesses in his or
> her favor; to have the assistance of counsel for his or her
> defense; to have an appeal as a matter of right, except as
> provided by law an appeal by an accused who pleads guilty
> or nolo contendere shall be by leave of the court; and as
> provided by law, when the trial court so orders, to have
> such reasonable assistance as may be necessary to perfect
> and prosecute an appeal.[41]

SORA is not a criminal statute. Therefore, because
SORA is a regulatory statute[42] and not a criminal

---

[40] Emphasis added.

[41] Emphasis added. See also MCL 763.1.

[42] As the Court noted in *Pennington*, 240 Mich App at 193, quoting
*Lanni v Engler*, 994 F Supp 849, 853 (ED Mich, 1998):

"Although the Act does not contain an express statement of
legislative intent, the implied purpose is plainly regulatory. Neither
notification or [sic] registration inflicts suffering, disability, or re-
straint on the registered sex offender. It does nothing more than
create a method for easier public access to compiled information that
is otherwise available to the public through tedious research in
criminal court files. Like similar laws in other states, the Michigan
Act also seeks to provide the local citizenry with information concern-

statute, a "criminal prosecution" is not at issue and neither Confrontation Clause applies.

We affirm.

WHITBECK, P.J., and SAWYER and HOEKSTRA, JJ., concurred.

---

ing persons residing near them who have been convicted of sexually predatory conduct and who, by virtue of relatively high recidivism rates among such offenders and the devastating impact that sex crimes have on society, pose a serious threat to society." [Citations omitted.]